**Harvey George DE ROSIER,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14839.**

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1955.

Rehearing Denied Feb. 18, 1955.

Herbert A. Warren, Jr., and Hilton R. Carr, Jr., Miami, Fla., for appellant.

L. E. Broome, Atty., Dept. of Justice, Washington, D. C., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellee.

Before HOLMES, BORAH, and RUS-SELL, Circuit Judges.

HOLMES, Circuit Judge.

Appellant was convicted on both counts of a two-count indictment charging violations of Section 1001 of Title 18, U.S.Code. This appeal challenges the jurisdiction and the venue of the court below, the sufficiency of the indictment to charge an offense, the substantiality of the evidence to support the verdict, and the correctness of the instructions under which the case was submitted to the jury.

The evidence shows that the Post Office Department Loyalty Board, acting on information to the effect that appellant was, or had recently been, a member of the J. B. Gordon Klavern of the Ku Klux Klan, issued to appellant, an employee of the Post Office Department, a "Notice of Proposed Removal Action," telling him that, because of his membership in and activity on behalf of the Klan organization, it had reasonable doubt as to his loyalty to the Government of the United States. He was advised of his right to answer the charges in writing within thirty days and to apply for an oral hearing at which he could be represented by counsel.

In response to this notice, appellant wrote a letter addressed to the Chairman of the Loyalty Board at Washington, D. C., in which he made certain false statements concerning his membership in the Ku Klux Klan. The letter was sworn to and signed in the presence of a notary public in the City of Hialeah, Florida, on August 18, 1951, and was sent from Florida to the Loyalty Board in Washington, D. C., where it was received two days later. To the letter was attached a copy of a letter purporting to have been written on May 1, 1950, and addressed to the Secretary of Sports, Inc., evidencing appellant's claim that he resigned from the Ku Klux Klan. Actually, this document was not what it purported to be, but was in fact a false writing or document fabricated by appellant to support his contention that he resigned from the Ku Klux Klan as soon as he realized that Sports, Inc., was merely a front for that organization.

The evidence shows further that appellant joined the J. B. Gordon Klavern of the Ku Klux Klan in April, 1950, and remained a member of that organization at least until January, 1951. At the time appellant joined the Klavern,

it was affiliated with the Association of Georgia Klans. This affiliation continued for a period of about four months after appellant became a member. The Ku Klux Klan and the Association of Georgia Klans are both contained in the Attorney General's list of subversive organizations.

The only substantial question presented is the one relating to the venue of the court being laid in the Southern District of Florida. The other issues, for the most part, are foreclosed by the record, the oral and documentary evidence, and the verdict of the jury. We have no doubt that the indictment was sufficient to charge offenses prohibited by the statute, and that the facts alleged therein were sufficient to advise appellant of the materiality of the false statements and the false document which he was accused of making and uttering. Neither are we in doubt as to the jurisdiction of the Loyalty Board to inquire into the past membership of appellant in an organization which, to say the least, was affiliated with a subversive organization named on the Attorney General's list at the time appellant became a member and for several months thereafter. Among the activities and associations of an employee which may be considered in connection with the determination of disloyalty may be one or more of the following:

"(vi) Membership in affiliation with or sympathetic association with any foreign or domestic organization * * * designated by the attorney general as * * having adopted a policy of advocating or approving the commission of acts of force or violence to deny other persons their rights under the Constitution of the United States." 5 C.F.R. (1949 Edition), Section 220.2 (2).

The venue and jurisdictional questions are raised in two ways: First, appellant contends that no offense was committed until his letter was received by the Loyalty Board in Washington, D. C.; therefore, no offense triable in the South-ern District of Florida has been charged or proven. Second, he contends that, even if proof that he prepared the letter in the Southern District of Florida and forwarded it from there would support venue and jurisdiction, the evidence is insufficient to show that he did actually forward the letter from that District. In answer to the first of these propositions, the Government relies upon 18 U.S.C. § 3237, which provides that any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed. This would seem to be a complete answer to the contention. When the letter containing the false statements and the fabricated document was prepared and forwarded to the Loyalty Board, there was set in motion the events which culminated in the commission of the offenses charged. It would be an excess of literalism to say that the appellant was only preparing to commit the offense, and that the actual commission thereof had not in fact begun at the time and place from which the letter was sent, mailed, or forwarded, to the Board. It is no answer to say that, by some fortuitous circumstance, the consummation of the crime might have been frustrated by the loss of the letter in transit, thereby rendering ineffectual the attempt to deliver the false statements. Necessarily, the commission of the offense must be viewed in retrospect. It is often not easy to draw a line between attempt and preparation; the former is such an intentional preparatory act as will apparently result, if not extrinsically prevented, in a crime which it was designed to effect.

In United States v. Valenti, 3 Cir., 207 F.2d 242, relied upon by appellant, the court held that, since the offense of filing a false affidavit with the National Labor Relations Board was not committed until the affidavit was received by the Labor Board, the offense was triable only in the district in which the affidavit

was received. This ruling was based upon the technical ground that the Labor Board had no jurisdiction until the affidavit was "on file" with it. The court, citing and quoting from United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 510, 60 L.Ed. 897, held further that, where the gist of the offense involves the filing of a document with a public official, the offense is committed at the place fixed for the filing, and is not a continuing offense commencing at the place from which the document is mailed. The Lombardo case involved an indictment returned in the Western District of the State of Washington, charging the offense of failing to file a report required to be filed in Washington, D. C. The Supreme Court held that the offense was committed and was indictable only in the place where the report was required to be filed, and not in the place where conditions existed which required the filing of such a report. The court, in that case, stated:

"Undoubtedly where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done; or where it may be said there is a continuously moving act, commencing with the offender and hence ultimately consummated through him, as the mailing of a letter; * * *."

Again, at page 78 of 241 U.S., at page 510 of 36 S.Ct., the court said: " 'For practical purposes it usually suffices to punish where the actor began, or where the subject suffered the intended result.' " As we construe the Lombardo case, it does not require a conclusion different from that which we have reached. To the extent, if any, that our decision is at variance with the ruling in the Valenti case, the latter is distinguishable on its facts as indicated by the concurring opinion therein. 207 F.2d 246.

■■ The record shows that the letter written by appellant was addressed to the Chairman of the Loyalty Board at Washington, D. C., and was dated "August 18, 1951, Hialeah Post Office, Hialeah, Florida," within the Southern District of Florida. It was sworn to and subscribed before a notary public on that date and in that city. Appellant testified that he "sent" it to the Loyalty Board, and the receiving stamp placed on it by the Board shows that it was received by that agency two days after its date. We think that this evidence was sufficient to warrant the finding of the jury, implicit in its verdict under the instructions of the court, that the letter was transmitted to the Loyalty Board from the Southern District of Florida. Whether the letter was mailed or sent by some other agency, it is implicit in the verdict of the jury that, in addition to the signing and swearing to a false statement, the appellant put the false documents out of his possession and into some agency's custody for transmission to the Loyalty Board at Washington, D. C., all of which was done by him in the Southern District of Florida. Consequently, the offense was begun in that district, and it became indictable either at the place of its beginning or at the place of its completion. In the Valenti case there was no proof of whether the false statement was mailed in the forum district or personally delivered in the filing district.

■■ It follows from what we have said that the court did not err in refusing appellant's request to instruct the jury that the jurisdiction of the Loyalty Board depended upon a finding that appellant was a member of a listed organization at the time the inquiry was conducted, and in permitting the jury to find as a fact whether the J. B. Gordon Klavern was a Ku Klux Klan within the meaning of that name as listed by the Attorney General. Neither did the court err in refusing to instruct the jury that, in order to find appellant guilty, it was necessary for the false statements actually to be considered by the Board in reaching its decision, and for the Board to be misled by them. There is nothing in the statute which authorizes such a construction.

There being no reversible error in the record, the judgment appealed from is affirmed.

Affirmed.

Judge RUSSELL sat during the oral argument of this case but, due to illness, took no part in this opinion.