**UNITED STATES of America,**
**Appellee,**

v.

**James W. MILLER, Defendant-Appellant.**

**No. 307, Docket 24457.**

United States Court of Appeals
Second Circuit.

Argued May 17, 1957.

Decided July 10, 1957.

Rehearing Denied Oct. 1, 1957.

See 248 F.2d 163.

Garey & Garey, New York City, and N. LeVan Haver, Kingston, N. Y., for appellant; Jacob J. Rosenblum, Sol Irving Sokolsky, Kingston, N. Y., and Peter F. Rooney, New York City, of counsel on main brief, and Charles H. Gaffney, Kingston, N. Y., of counsel on supplemental brief.

Paul W. Williams, U. S. Atty., New York City, for appellee; Adelbert C. Matthews, Jr., George C. Mantzoros and Maurice N. Nessen, Asst. U. S. Attys., New York City, of counsel.

Before CLARK, Chief Judge, and SWAN and POPE, Circuit Judges.

SWAN, Circuit Judge.

This appeal is from a judgment of conviction and sentence, after trial to a jury, for making false and fraudulent statements in a matter within the jurisdiction of the Fiscal Service of the United States Treasury Department.[1] The indictment comprised three counts, each based on a separate letter addressed to the Fiscal Service and concerned with the cashing of certain United States Savings Bonds at a bank of which the defendant was president. The bonds were registered in the names of members of the Nat Chernoff family from whom they had been stolen. The Treasury Department claimed that the bank was liable for erroneous payment of the bonds, and the three letters were written for the purpose of convincing the Fiscal Service that the bonds had been properly cashed in accordance with the requirements of the Treasury's circular letter. Irving Mishel, a depositor of the bank, had presented the bonds for redemption. He was a convicted felon who ran an illegal check-cashing agency and was in the business of disposing of stolen bonds. He testified as a witness for the prosecution. His testimony, if believed, would justify the jury not only in discrediting Miller's testimony that he was an innocent dupe of Mishel but in finding that he knew that Mishel had no right to cash the bonds and received 10 per cent of their proceeds for assisting him to do so. All the points urged on appeal are technical and lack substantial merit.

■■ The first to be considered relates to venue. The letters containing the allegedly false and fraudulent statements were mailed in New York City. Two of them were received by the ad-

1. The offense is defined in 18 U.S.C.A. § 1001 which reads as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

dressee in Washington, D. C., the other in Chicago, Illinois. The appellant contends that the crime defined in section 1001 of Title 18 is committed only when the false statement is communicated to the federal agency having jurisdiction of the matter involved; consequently venue was improperly laid in the Southern District of New York. This argument takes no account of another statute, 18 U.S.C.A. § 3237, dealing with offenses commenced in one district and completed in another.[2] The precise point with respect to the crime of which the appellant has been convicted was determined in De Rosier v. United States, 5 Cir., 218 F.2d 420, certiorari denied 349 U.S. 921, 75 S.Ct. 660, 99 L.Ed. 1253. We agree with it. Moreover, even if the venue point had merit, we should have to hold that it was waived, since the defendant, with full knowledge that the counts in the indictment were based on the letters did not question venue until after the prosecution had rested its case.

 Prior to trial the defendant moved for dismissal of the first and second counts of the indictment on the ground that they do not inform him of the nature of the accusation nor provide "a plain, concise and definite written statement of the essential facts constituting the offense charged," as required by Rule 7(c), Federal Rules of Criminal Procedure. The motion to dismiss was denied. On appeal he asserts that all three of the counts are defective in using the words "to the effect that" in charging the falsity of the statement involved in each count. As to count III the failure to raise the alleged defect by pre-trial motion constituted a waiver.[3] Since the appellant was given a five year sentence on each count, all to run concurrently, he would gain nothing, even if counts I and II were held to be "defectively" stated. But plainly they were not. Count I is set forth in full in the margin.[4] Count II, based on the letter of April 4, 1952, makes substantially the same charge.[5] Each of the counts is a good illustration of the simplified pleading required by Rule 7(c) of the Federal Rules of Criminal Procedure. It is sufficient to enable the defendant to understand the nature of the accusation, to give him the needed information to prepare his defense, and to make it possible for him to plead the judgment in bar of another prosecution for the same offense should occasion for doing so arise. That

2. "§ 3237. Offenses begun in one district and completed in another

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

3. See Rule 12(b) (2), F.R.Cr.P., 18 U.S. C.A.; Dunbar v. United States, 156 U.S. 185, at pages 191–192, 15 S.Ct. 325, 39 L.Ed. 390.

4. "On or about December 26, 1951 at the Southern District of New York, James W. Miller, the defendant herein, in a matter within the jurisdiction of a de-

partment of the United States, namely, the Fiscal Service of the United States Treasury Department, did unlawfully, wilfully and knowingly make a false and fraudulent statement as to a material fact to the effect that a quantity of bonds in the names of members of the Nat Chernoff family were properly cashed in accordance with procedures laid down by circular letter of the United States Treasury Department, whereas in truth and in fact as the defendant then and there well knew, the said bonds were not properly cashed in accordance with procedures laid down by the said circular letter. (Title 18, Section 1001, United States Code)."

5. Count III, based on the letter of June 4, 1952 charges the making of a false and fraudulent statement "to the effect that one Irving Mishel introduced a person to the defendant, James W. Miller, as Mr. Chernoff, whereas in truth and in fact as the defendant then and there well knew, he did not introduce any person to the defendant as Mr. Chernoff."

is all that is required of an indictment, as this court has often held.[6]

Interrelated with the claimed insufficiency of the indictment are claims of fatal variance between allegations and proof under Counts I and II, and of errors in the court's charge with respect to these counts. Each count charged that the defendant made a false statement to the effect that the bonds were properly cashed.[7] The proof adduced to establish the charges were letters written by the defendant dated respectively December 26, 1951 and April 4, 1952. The pertinent part of the December letter stated:

> "At the time the investigation was made by your Department *we were informed* [italics added] that the bonds were properly cashed in accordance with procedure laid down in your official circular and consequently no claim would be made against us."

The April letter said:

> "We regret that you are insisting on reimbursement because *we feel* [italics added] that these bonds were cashed in good faith and within the meaning, letter and spirit of Paragraph 4 of the Treasury Department in a circular covering such redemptions dated December 19, 1947."

Because of the italicized words in the letters above quoted the appellant contends that the proof failed to establish the accusation charged in counts I and II, respectively. The contention of a fatal variance is preposterous. The indictment did not purport to state the exact words of the false statement but it plainly stated the substance of the accusation. The defendant claimed no surprise when the letters were offered and made no objection to their admission. The governing rule is stated in Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314. Within the meaning of that rule the accused was definitely informed as to the charges against him; he was not taken by surprise and he is protected against another prosecution for the same offense.

Apparently no exception was taken to the portion of the court's charge as to counts I and II, which the appellant now claims was erroneous and must have confused the jury. Nevertheless, we have carefully examined the charge and think it correctly advised the jury as to what they must find to convict the defendant under counts I and II.

█ With respect to count III the appellant asserts error in the charge and in permitting the Government to use hearsay evidence. Under this count the issue was whether or not Mishel introduced anyone to Miller as Chernoff.[8] The portion of the court's charge to which objection was made is set forth in the margin.[9] The tellers testified that when they cashed the bonds they saw Miller at his desk and no one was with him except Mishel. On cross-examination each teller admitted that he did not know whether Miller came into the bank alone or with someone else who might have been introduced to Miller and left before they saw Mishel and Miller at the latter's desk. The appellant complains that the quoted charge leaves the impression that the tellers corroborated Mishel. We do not so read it. The words "at that time" refer to the time when the bonds were cashed, not to the time of the claimed introduction. The trial

6. See United States v. Josephson, 2 Cir., 165 F.2d 82, 85, certiorari denied 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122, and cases there cited.

7. See note 4, supra.

8. See note 5, supra.

9. "Now, that gets us to one of the heart questions, whether in fact Mishel introduced a person to the defendant at the time the bonds were cashed as Chernoff or whether he did not. The defendant claims that he did, and he has testified that he did. The prosecution claims that he did not, and in that course they have submitted Mishel as a witness and they have produced the tellers who claim to have seen who was at Mr. Miller's desk at that time. You have heard their testimony in that regard."

490

judge was merely summarizing some of the evidence and he repeatedly cautioned the jury that their recollection of the facts, not his, was controlling. We see no error in the charge.

■ On the several occasions when the bonds were cashed, they were taken by a bank guard named Kennedy, who died before the trial, from Miller to a teller who cashed them and gave Kennedy the money to take back to Miller. The three tellers were permitted, over the defendant's objection, to testify as to conversations with Kennedy regarding messages to them from Miller. This testimony was properly admitted as being within an exception to the hearsay rule, namely, that statements made by an agent within the scope of his authority are admissible against his principal.[10] Kennedy was Miller's agent to deliver the bonds and return with the money. While it is true that the agency cannot be proved by the hearsay statements of the alleged agent himself, there was ample competent evidence to establish the agency-principal relationship between Kennedy and Miller.

■ Complaint is made that the cross-examination of the Government's witness Mishel was unduly limited. We see no basis for such complaint. On the contrary the record shows that the defendant was permitted extraordinary latitude in his cross-examination. Attempts to bring out that Mishel had duped officers of other banks had no probative value on the issues in this case and were properly checked. The court also properly prohibited independent proof, other than the defendant's own denial, to contradict Mishel's testimony on cross-examination as to collateral matters; for example, his statement about a safety deposit box of which he

had joint control with Miller.[11] In the matter of cross-examination the trial judge has wide discretion and we see nothing to indicate that his discretion was abused.

Finally it is urged that improper cross-examination of the defendant constituted reversible error. On his direct examination the defendant related in detail the story of his life from boyhood on, telling of his hard work, his rapid promotion in the banking business, his unblemished career and his numerous civic honors and public services. Thus he placed in issue his character.[12] The cross-examination sought to demolish the claims he had voluntarily asserted. The allegedly improper questions related to the subject matter of his own direct examination. To only one of the whole series of questions did he make objection. We think no reversible error was committed.

Judgment affirmed.

10. United States v. S. B. Penick & Co., 2 Cir., 136 F.2d 413, 416; United States v. Perillo, 2 Cir., 164 F.2d 645, 647; Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 210 F.2d 732, 751, certiorari denied 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645; 4 Wigmore, Evidence, 3rd Ed., § 1078.

11. See Smith v. United States, 9 Cir., 10 F.2d 787, 788.

12. United States v. Silver, 2 Cir., 235 F.2d 375, 378, certiorari denied 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80; United States v. Pagano, 2 Cir., 224 F.2d 682, 686, certiorari denied 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 779.