## TRAVIS *v.* UNITED STATES.

No. 10.   Argued December 13, 1960.—Decided January 16, 1961.

*Telford Taylor* argued the cause for petitioner.   With him on the briefs were *Nathan Witt* and *Kenneth Simon.*

*George B. Searls* argued the cause for the United States. With him on the briefs were *Solicitor General Rankin, Assistant Attorney General Yeagley, Philip R. Monahan* and *Kevin T. Maroney.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

In this case [1] petitioner was charged on four counts of an indictment with the making and filing of false non-Communist affidavits [2] required by § 9 (h) of the National Labor Relations Act, as amended by the Taft-

---

[1] There are two companion cases, No. 3, *Travis* v. *United States*, and No. 71, *Travis* v. *United States*, in which we also granted certiorari and which present phases of the main case. We discuss them near the close of the opinion.

[2] This section, which was repealed by § 201 (d) of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 519, 525, provided:

"No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 10, *unless there is on file with the Board an affidavit* executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of section 35 A of the Criminal Code shall be applicable in respect to such affidavits." (Italics added.)

Section 35 (A) of the Criminal Code was repealed by § 21 of the Act of June 25, 1948, 62 Stat. 683, 862, and is now covered, so far as we are now concerned, by 18 U. S. C. § 1001, which provides:

"Whoever, *in any matter within the jurisdiction of any department or agency of the United States* knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both." (Italics added.)

Hartley Act, 61 Stat. 136, 146, and further amended by the Act of Oct. 22, 1951, § 1 (d), 65 Stat. 601, 602. The indictment charged that the affidavits were false writings or documents made and executed in Colorado and filed in Washington, D. C., with the National Labor Relations Board.

Petitioner was convicted and on appeal the judgment of conviction was reversed for a new trial. 247 F. 2d 130. Petitioner was tried a second time and again convicted. This time the judgment was affirmed on appeal, one judge dissenting. 269 F. 2d 928. The case is here on a writ of certiorari. 363 U. S. 801.

Before the first trial, petitioner moved to dismiss the indictment on the ground that venue was improperly laid in Colorado. The District Court denied the motion. Although the Court of Appeals reversed on another ground on petitioner's first appeal, it specifically approved the laying of venue in Colorado (247 F. 2d 130, 133–134) recognizing that its ruling was in conflict with that in *United States* v. *Valenti,* 207 F. 2d 242 (C. A. 3d Cir.). It is solely to this issue that we address ourselves.

It is agreed that the affidavits were executed by petitioner as a union officer in Colorado and mailed there to the Board in Washington, D. C., where they were received and filed.[3] The prosecution contends—and it was held below—that the offense was begun in Colorado and completed in the District of Columbia. In that view venue was properly laid in Colorado by virtue of 18 U. S. C. § 3237 (a) which provides:

> "Except as otherwise expressly provided by enactment of Congress, any offense against the United

---

[3] Under the regulations in force at the time of filing, petitioner's affidavit was required to be on file with the General Counsel of the National Labor Relations Board in Washington, D. C. 29 CFR § 101.3 (b) (since deleted, see 24 Fed. Reg. 7501 (Sept. 17, 1959)).

States begun in one district and completed in another . . . may be inquired of and prosecuted in any district in which such offense was begun . . . or completed."

We start with the provision of Art. III, § 2 of the Constitution that criminal trials "shall be held in the State where the said crimes shall have been committed," a safeguard reinforced by the command of the Sixth Amendment that the criminal trial shall be before an impartial jury of "the State and district wherein the crime shall have been committed." We start also with the assumption that Colorado, the residence of petitioner, might offer conveniences and advantages to him which a trial in the District of Columbia might lack. We are also aware that venue provisions in Acts of Congress should not be so freely construed as to give the Government the choice of "a tribunal favorable" to it. *United States* v. *Johnson,* 323 U. S. 273, 275. We therefore begin our inquiry from the premise that questions of venue are more than matters of mere procedure. "They raise deep issues of public policy in the light of which legislation must be construed." *United States* v. *Johnson, supra,* 276.

Where various duties are imposed, some to be performed at a distant place, others at home, the Court has allowed the prosecution to fix the former as the venue of trial. *Johnston* v. *United States,* 351 U. S. 215, 222. The use of agencies of interstate commerce enables Congress to place venue in any district where the particular agency was used. *Armour Packing Co.* v. *United States,* 209 U. S. 56. "The constitutional requirement is as to the locality of the offense and not the personal presence of the offender." *Id.,* at 76. Where the language of the Act defining venue has been construed to mean that Congress created a continuing offense, it is held, for venue purposes, to have been committed wherever the wrongdoer roamed.

*United States* v. *Cores,* 356 U. S. 405. And see *Brown* v. *Elliott,* 225 U. S. 392. The decisions are discrete, each looking to the nature of the crime charged. Thus, while the use of the mails might be thought to allow venue to be laid either at the sending or receiving end, the trial was recently restricted to the district of the sender, in light of the constitutional provisions already mentioned and the phrasing of a particular criminal statute. *United States* v. *Johnson, supra,* 277–278. Where Congress is not explicit, "the *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States* v. *Anderson,* 328 U. S. 699, 703.

Section 9 (h) of the National Labor Relations Act,[4] with which we are concerned, did not require union officers to file non-Communist affidavits. If it had, the whole process of filing, including the use of the mails, might logically be construed to constitute the offense. But this statutory design is different. It requires that the Board shall make no investigation nor issue any complaint in the matters described in § 9 (h) "unless there is on file with the Board" a non-Communist affidavit of each union officer. The filings are conditions precedent to a union's use of the Board's procedures. *Leedom* v. *International Union,* 352 U. S. 145, 148. The false statement statute,[5] under which the prosecution is brought, penalizes him who knowingly makes any "false" statement "in any matter within the jurisdiction of any department or agency of the United States." There would seem to be no offense, unless petitioner completed the filing in the District of Columbia. The statute demanded that the affidavits be on file with the Board before it could extend help to the union; the forms prescribed by the Board required the filing in the

---

[4] See note 2, *supra.*

[5] See 18 U. S. C. § 1001, note 2, *supra.*

District of Columbia; the indictment charged that petitioner filed the affidavits there. The words of the Act—"unless there is on file with the Board"—suggest to us that the filing must be completed before there is a "matter within the jurisdiction" of the Board within the meaning of the false statement statute.[6] When § 9 (h) provides the criminal penalty,[7] it makes the penal provisions applicable "to such affidavits," *viz.*, to those "on file with the Board."

The Government admits that the filing is necessary to the "occurrence" of the offense, but it argues that the offense has its "beginning" in Colorado, because it was there that "the defendant had irrevocably set in motion and placed beyond his control the train of events which would normally result (and here did result) in the consummation of the offense." We do not agree with this analysis. Venue should not be made to depend on the chance use of the mails, when Congress has so carefully indicated the *locus* of the crime. After mailing, the affidavit might have been lost; petitioner himself might have recalled it.[8] Multiple venue in general requires crimes consisting of "distinct parts" or involving "a continuously moving act." *United States* v. *Lombardo,* 241 U. S. 73, 77. When a place is explicitly designated where a paper must be filed, a prosecution for failure to file lies only at that place. *Id.,* at 76–78. The theory of that case was followed in *United States* v. *Valenti, supra,* where Judge Maris stated that no false statement has been made within the jurisdiction of the Board "until the affidavit through its filing has become the basis for action by the Board." *Id.,* at 244.

---

[6] See 18 U. S. C. § 1001, note 2, *supra.*

[7] See note 2, *supra.*

[8] 39 CFR § 43.6 (a) provides: "Mail deposited in a post office may be recalled by the sender, by the parent or guardian of a minor child, or by the guardian of a person of unsound mind."

We think that is the correct view when 18 U. S. C. § 3237 is read in light of the constitutional requirements and the explicit provision of § 9 (h). The *locus* of the offense has been carefully specified; and only the single act of having a false statement at a specified place is penalized. The rationale of *United States* v. *Lombardo, supra,* a case involving a failure to file, is therefore equally applicable here. We conclude that venue lay only in the District of Columbia.

Petitioner also brought here two companion cases arising out of the same trial. In No. 3 he asked for a new trial on the ground of newly discovered evidence. In No. 71 he moved a second time for a new trial on the ground of newly discovered evidence. We granted the petitions in these cases as they were protective of petitioner's rights in the main litigation. 363 U. S. 801. But since our holding in the main case is that venue was improperly laid in Colorado, the judgment of conviction must be set aside. Accordingly the orders in Nos. 3 and 71 denying new trials have become moot and are vacated in the customary manner. In No. 10 the judgment is

*Reversed.*

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANKFURTER and MR. JUSTICE CLARK join, dissenting.

Title 18 U. S. C. § 3237 (a) provides in pertinent part:

"Except as otherwise expressly provided by enactment of Congress, any offense against the United States *begun* in one district and *completed* in another . . . may be inquired of and prosecuted in any district in which such offense was begun . . . or completed." (Emphasis added.)

On my view of the offense with which Travis is charged, I think that under this section the Government was entitled to proceed either in Colorado, where this affidavit

was made, or in the District of Columbia, where the affidavit was filed, and therefore dissent from the Court's holding that venue was improperly laid in Colorado.

Section 9 (h) of the National Labor Relations Act, as amended by the Taft-Hartley Act,[1] 61 Stat. 136, 146, provided that the National Labor Relations Board shall neither make an investigation nor issue any complaint on behalf of a labor union unless there is on file with it a non-Communist affidavit of the kind here in question. 18 U. S. C. § 1001 [2] is specifically made applicable to such affidavits. That section of the criminal code makes it an offense, in any matter within the jurisdiction of any department or agency of the United States, to falsify a

---

[1] "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of [18 U. S. C. § 1001] shall be applicable in respect to such affidavits." 29 U. S. C. § 159 (h), repealed by the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 519, § 201 (d).

[2] "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

material fact, make a false statement, or make or use any false writing or document. The elements of the crime here involved, therefore, are set out in 18 U. S. C. § 1001, and what § 9 (h) does is simply to supply the "jurisdiction of . . . [an] agency of the United States" required by § 1001.

If this crime may properly be viewed as having been begun in the district of Colorado and completed in the district of the District of Columbia, then venue may be laid in either district under 18 U. S. C. § 3237 (a). Whether that is the proper view of this offense is an issue on which the authorities in this Court are at best inconclusive. In *In re Palliser*, 136 U. S. 257, the Court held that where the defendant had mailed in New York to a postmaster in Connecticut a letter which constituted a prohibited tender of a contract with intent to induce the postmaster to violate his lawful duty, venue could properly be laid in the district of Connecticut. The Court expressly left open the question of whether venue might also have been laid in New York, 136 U. S., at 267–268. To the same effect is *Burton* v. *United States,* 202 U. S. 344. *United States* v. *Lombardo,* 241 U. S. 73, which the Court considers particularly significant, is not controlling, since in that case the offense charged was the *failure* to file with the Commissioner General of Immigration certain information concerning an alien woman whom the defendant was harboring for purposes of prostitution. In such a charge it is difficult to see how the defendant does anything at all except at the place where he fails to file. But cf. *United States* v. *Cores,* 356 U. S. 405. In contrast, the false affidavit in the present case first came into existence in Colorado, having been made and sworn to there.

Nor do the opinions in the lower courts establish anything like a clear line of authority from which it would be unwise now to depart. If anything, I think, they indi-

cate a contrary conclusion to that now reached by the Court. Compare *Henslee* v. *United States,* 262 F. 2d 750; *United States* v. *Miller,* 246 F. 2d 486; *De Rosier* v. *United States,* 218 F. 2d 420; *United States* v. *Downey,* 257 F. 366, and *Bridgeman* v. *United States,* 140 F. 577, with *United States* v. *Valenti,* 207 F. 2d 242.

In these circumstances, the proper course to follow appears to me to be to determine the appropriate venue "from the nature of the crime alleged and the location of the act or acts constituting it," *United States* v. *Anderson,* 328 U. S. 699, 703, and that determination should take into account that

> ". . . The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place. Provided its language permits, the Act in question should be given that construction which will respect such considerations." *United States* v. *Cores,* 356 U. S. 405, 407.

In this kind of case, prosecution in the district in which the affidavit was executed, most often I would suppose the place where the union offices are located, is more likely to respect the basic policy of the Sixth Amendment than would a prosecution in the district where the affidavit was filed. The witnesses and relevant circumstances surrounding the contested issues in such cases more probably will be found in the district of the execution of the affidavit than at the place of filing which, as in this instance, will often be for the defendant "a remote place," *United States* v. *Cores, supra*—that is the District of Columbia where the headquarters of the National Labor Relations Board are located in the case of officers of international unions, or elsewhere throughout the country where the Board has branch offices in the case of local union officers, 29 CFR § 101.3.

This is not to say that venue *must* be limited to the place of execution of the affidavit, but only that there is no lack of consonance with the underlying policy of the Sixth Amendment in permitting venue to be laid there if the elements of the crime allow. *United States v. Anderson, supra.* In holding that the crime for which this petitioner was prosecuted does not allow venue to be laid in the district of the making of the affidavit, the Court considers the essence of the crime to be the filing of the affidavit, and until that is accomplished it holds that the crime is not even begun. But since it is 18 U. S. C. § 1001 which defines the offense, § 9 (h) only supplying the requisite jurisdiction of the agency of the United States, and since by § 1001 the offense consists of *falsifying* a material fact, *making* a false statement, or *making* or using any false writing or document, it seems eminently reasonable to consider that the offense is at least definitively begun at the place where the false affidavit is actually made, sworn and subscribed. Cf. the *Henslee, Miller, De Rosier, Downey* and *Bridgeman* cases, *supra.*

It is of course true that the offense is not completed until the affidavit is filed with the Board, but I do not think it adds anything to say, as the Court does, that until such time as the affidavit is filed with the Board there is no matter "within the jurisdiction of any department or agency of the United States." The fact that the filing completes the offense by giving the Board jurisdiction over the matter does not, in my view, detract from the conclusion that the offense was begun when and where the affidavit was executed. Indeed this would seem to be the very type of situation contemplated by 18 U. S. C. § 3237 (a).

Since I consider it would be inappropriate for me, in dissent, to discuss issues which the Court does not reach, I refrain from considering the other grounds for reversal urged by the petitioner.