**UNITED STATES of America,
Appellee,**

**v.**

**Joseph P. CANDELLA et al.,
Defendants-Appellants.**

**No. 195, Docket 73-1894.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1973.

Decided Nov. 26, 1973.

Certiorari Denied March 18, 1974.
See 94 S.Ct. 1563.

**1224**

Howard Wilson, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., John W. Nields, Jr., Asst. U. S. Atty., of counsel), for appellee.

Harvey Tropp, New York City (Gordon & Tropp, Joel R. Schweidel, New York City, of counsel), for defendants-appellants.

Before FRIENDLY, ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

Joseph P. Candella and John Kevin Gilgan were the principal officers and the sole owners of Beacon Moving and Storage, Inc., a Brooklyn-based moving company. In 1971, Beacon undertook to move the property of four commercial tenants, Lapchinsky Iron Works, Chelsea Desk Co., Precision Container Co. and G.A.L. Manufacturing Co., each of which had been forced to move from Manhattan and Brooklyn sites because of federally funded urban renewal projects. Their property had been condemned by the City of New York and each was entitled to reimbursement from the City for its moving expenses.

The tenants, who had the initial obligation of paying the mover for his services, assigned their claims for reimbursement from the City to the mover, as permitted by the United States Department of Housing and Urban Development (HUD) regulation (24 C.F.R. § 41.12). The City then had the responsibility to process and pay the claims made by the movers. The City, in turn, was entitled to reimbursement by HUD. The City agency in charge, the Department of Relocation, based its payments on bills submitted by the moving company which were accompanied by so-called "bills of lading," which detailed the number of man-hours worked on each day by the employees of the mover, plus an affidavit by the mover which attested to the accuracy of the bills of lading. The affidavits relating to the moves involved herein were executed on forms prepared by the City and not by HUD. The convictions appealed from were based on indictments charging that the bills of lading and affidavits submitted by the defendants for the four moves in question were false, in violation of 18 U.S.C. § 1001 [1] and 18 U.S.C. § 2 (aiding and abetting).

Counts 1, 2, 3 and 5 related to false affidavits, and counts 6, 7, 8 and 10 charged that the bills of lading submitted exaggerated the amount of work performed. (Counts 4 and 9, which related to a fifth moving operation, were dismissed for jurisdictional reasons before trial with Government consent.) The jury trial was conducted before Hon. Dudley B. Bonsal, United States District

---

[1]. 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Judge, Southern District of New York. The three defendants were found guilty on all eight counts on February 16, 1973, and judgments were entered on April 3, 1973. Judge Bonsal sentenced Candella and Gilgan to concurrent prison terms of 60 days on each of the eight counts and fines of $1000 on each count. The corporate defendant Beacon was fined $2000 on each of the eight counts. This appeal followed.

## I. JURISDICTION

Appellants first claim that counts 1, 2, 3 and 5 of the indictment, which charged that the "Affidavits by Moving Company for Moving Expenses" with respect to the four moves in question were false, should have been dismissed on defendants' pre-trial motion for lack of jurisdiction of the subject matter. Appellants' argument is based on the contention that the affidavits in question were not within the jurisdiction of HUD because they were not forms required by HUD, and were not only gratuitous but improper. Since the statute involved in this case prohibits the making of any false statements in any matter within the jurisdiction of a federal agency, the counts based upon the affidavits must fall if the affidavits were not in a matter within the jurisdiction of HUD.

The applicable HUD regulation is as follows:

(a) *Form of claim.* To obtain a relocation payment, site occupants shall file written claims with the agency on the appropriate HUD forms.

(b) *Documentation in support of a claim.* A claim shall be supported by the following:

(1) If for moving expenses, except in the case of a fixed payment, a receipted bill or other evidence of such expenses. By prearrangement be-

tween the agency, the site occupant, and the mover, evidenced in writing, the claimant or the mover may present an unpaid moving bill to the agency, and the agency may pay the mover directly.

(2) If for actual direct loss of property, written evidence thereof, which may include appraisals, certified prices, copies of bills of sale, receipts, canceled checks, copies of advertisements, offers to sell, auction records, and such other records as may be appropriate to support the claim.

(3) In any other case, such documentation as may be required by the agency, which may include income tax returns, withholding or information statements, and proof of age.

24 C.F.R. § 41.12.

This regulation is interpreted by appellants to preclude the use of the affidavit required by the City. They read § 41.-12(b)(3) to mean that the City may require other documentation in its discretion only in cases not covered by subdivisions (1) and (2). While § 41.-12(b)(1) requires that a claim for moving expenses be supported by a receipted bill (here the "bill of lading"), we cannot construe the regulation to hamstring the City so as to make the bill the sole and exclusive documentation to be submitted. The section in fact permits "other evidence of such expenses." While HUD may not have provided its own forms for reimbursement in cases not involving moving expenses or direct property losses, there is no language at all in the regulation which precludes the City from employing supplemental documentation in a moving expense situation. We read the regulation as only requiring the minimum; if further documentation was meant to be excluded the regulation could have easily so provided.[2]

---

2. Under HUD regulations, the City shares a responsibility to pay a portion of the moving expenses of the tenant. Present regulations continue to provide for City involvement.

24 C.F.R. § 41.13. Due to procedural problems detailed in the affidavit of a HUD official appearing in the record before us, the Comptroller General ruled that HUD would

The jurisdiction of HUD here is clear. The City entered contracts with the United States on specific urban renewal projects including those which prompted the moving here. The United States became ultimately responsible for paying 100% of the moving expenses incurred by the four concerns involved. The interest of HUD in this matter was made abundantly clear to the appellants. They agreed to be paid by the City instead of the tenants. The affidavits they executed to obtain reimbursement from the City fully explained their purpose and HUD's involvement, reciting in part:

> [T]his affidavit is sent to the City of New York, knowing that the said City of New York, will rely thereon in making proper payment of Relocation payment for the moving of said Tenant by virtue of Section 114 of the Housing Act of 1949 as amended, and will make this affidavit available to the Department of Housing and Urban Development of the United States of America for the purpose of securing approval for full or partial reimbursement, and that any false statement will be a violation of the provisions of the United States Code subjecting the maker hereof to the penalties contained in the pertinent sections thereof.

It is thus clear beyond any doubt that the mover not only knew that the City would make the affidavits available to HUD for reimbursement purposes, but that any false statements contained therein would constitute violations of the United States Code subjecting him to criminal sanctions.

In arguing that the affidavits were not made in matters within the jurisdiction of any agency of the United States, appellants rely upon Lowe v. United States, 141 F.2d 1005 (5th Cir. 1944).

In that case, an employee of a private shipbuilder made a false statement to his foreman as to the number of hours he had worked on a particular day. The company had an agreement with the United States Maritime Commission under which it was reimbursed for its payroll costs. The court held that the payroll department of the shipyard company was not an agency of the United States, nor was it controlled or supervised by the federal agency. Hence, there was no offense against the United States. The fact pattern here was, of course, markedly different. Urban renewal is a joint enterprise of the City and the Federal Government. Each government cooperates in the funding of federally assisted projects. The City is responsible for administering federally funded projects, as well as those in which it provides the funding alone. The City's procedures for direct payment to movers are subject to explicit regulation, supervision and audit by HUD.

In distinguishing Lowe, the Eighth Circuit in Ebeling v. United States, 248 F.2d 429, 435, cert. denied, 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 261 (1957) stated:

> We read the opinion as implying that there was in that case no charge, or anything to show, that the employee knew that the work which he was doing, and the wages which he claimed, had been made the subject of an express contract provision between his employer and the government, constituting them a matter of direct charge and reimbursing obligation on the part of the United States; that the working time which he turned in thus necessarily would be a matter which was to be used against the government and as to which it accordingly had a right of audit and adjustment; and that in making the false statement with which he was charged,

pay for all of the moving expenses involved in the projects here in issue. Thus, the City is not a gratuitious intruder in the auditing process but has a definite stake in assuring that the bills submitted accurately reflect the cost of moving. With the widespread publicity attendant upon raids of the City treasury, the affidavit requirement here cannot be at all characterized as improper but is in fact commendable.

he had turned it in on this basis and with the intent that it was to be accepted and used in that relationship. The case here is even stronger since the appellants were not only made aware of the nature and purpose of the affidavit, but were further advised that false statements would be violative of the United States Code.

■ Appellants also argue that counts 1 and 6 of the indictment involving the affidavit and bill of lading submitted by the appellants for the moving of the Lapchinsky Iron Works should have been dismissed since they involved a payment of only $3300. HUD regulations require that all claims for moving expenses in excess of $10,000 be approved by HUD. In the case of claims under $10,000, the City is authorized to make payment without securing express approval from HUD, although the complete file on such claims must be kept available by the City for audit and inspection by HUD. The affidavits and bills presented in connection with the Lapchinsky move thus were not turned over to HUD. Because of this, appellants argue that counts 1 and 6 cannot be said to concern "matters within the jurisdiction" of HUD. Case law makes it clear, however, that a violation of § 1001 does not require that the false statement must actually have been submitted to a department or agency of the United States, but rather that it was contemplated that the statement was to be utilized in a matter which was within the jurisdiction of such department or agency. See United States v. Kraude, 467 F.2d 37, 38 (9th Cir.), cert. denied, 409 U.S. 1076, 93 S.Ct. 684, 34 L.Ed.2d 664 (1972); United States v. Greenberg, 268 F.2d 120, 122 (2d Cir. 1959); United States v. Ebeling, *supra*, 248 F.2d at 434; United States v. Myers, 131 F. Supp. 525, 529–530 (N.D.Cal.1955).

## II. VENUE

■ The appellants argue that venue was improperly laid in the Southern District of New York with respect to counts 1, 3, 6 and 8, which involved the affidavits and bills of lading of Lapchinsky and Precision, both Brooklyn-based companies which were being moved from Brooklyn locations. The argument is that since the allegedly false statements were prepared, executed and handed to New York City officials in Brooklyn, the crime was committed there, and the venue is therefore proper only in the Eastern District of New York, which embraces Brooklyn. While the question of whether the trial is conducted almost literally at one end of the Brooklyn Bridge or the other might seem to be a quibble, questions of venue in criminal cases are of constitutional concern. United States v. Johnson, 323 U.S. 273, 276, 65 S.Ct. 249, 90 L.Ed. 562 (1944). Venue must be laid where the crime was committed, and that place is to be "determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Anderson, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946). The Government argues that venue properly lies in the Southern District because the affidavits and bills of lading in question were simply accepted at the City's branch offices in Brooklyn for the convenience of parties seeking to file papers with the Department of Relocation and were then conveyed to the central office in Manhattan for examination and payment. The Lapchinsky documents remained in the City's Manhattan office for subsequent audit by HUD in New York. The Precision documents, involving expenses in excess of $10,000, were sent to the HUD office in Manhattan, where the City's initial decision to make payment was approved. The appellants cite no authority for their position but seem to rely on the theory that since enough had been done to constitute a crime in the Eastern District, the crime therefore terminated.

However, under 18 U.S.C. § 3237(a), an offense begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which such offense was "begun, continued, or complet-

ed." Although enough was done in the Eastern District to constitute a crime there, as appellants admit (cf. United States v. Ruehrup, 333 F.2d 641 (7th Cir.), cert. denied, 379 U.S. 903, 85 S.Ct. 194, 13 L.Ed.2d 177 (1964)), it does not follow that the crime then terminated, and that what transpired in Manhattan was irrelevant for venue purposes. See United States v. Miller, 246 F.2d 486 (2d Cir.), cert. denied, 355 U.S. 905, 78 S.Ct. 332, 2 L.Ed.2d 261 (1957); De Rosier v. United States, 218 F.2d 420 (5th Cir.), cert. denied, 349 U.S. 921, 75 S.Ct. 660, 99 L.Ed. 1253 (1955). Appellants seek to distinguish *Miller* and *De Rosier* because the City and not the defendants (as in those cases) forwarded the offending documents to Manhattan. The City's accepting the papers in Brooklyn, however, no more confined the offense to Brooklyn than the Post Office Department's acceptance of the documents in *Miller* and *De Rosier* confined the offense in those cases to the district in which the mailbox was located.

We think that venue is properly laid in "the whole area through which force propelled by an offender operates." United States v. Johnson, *supra,* 323 U. S. at 275, 65 S.Ct. at 250. The force propelled here by the defendants immediately contemplated Manhattan. 18 U. S.C. § 1001 defines the offense as the making of a false or fraudulent statement or representation in a matter within the jurisdiction of a federal agency. The false statements here were intended to produce funds. The statements continued to be false and continued to be within the jurisdiction of the United States not only when initially presented but also upon arrival in Manhattan, where the decision was reached to make the funds available. See United States v. Kenofskey, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917). Venue for all counts thus was properly laid in the Southern District of New York.

### III. EVIDENCE

The appellants urge that the court below erred in not directing a verdict of acquittal on the ground that the Government had not established that the bills of lading were false. The Government sought to establish falsity by comparing the man-hours for each moving job claimed on the bills of lading with the corporation's own payroll books. The appellants argue that their payroll books were grossly inaccurate or that even if they were accurate, the Government arbitrarily deleted men and hours found in the payroll book from its computations. We are of course bound to view the evidence in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Tutino, 269 F.2d 488, 490 (2d Cir. 1959). There is ample evidence from which the jury could infer that the bills of lading were knowingly false and fraudulent. The claims of appellants were fully presented to the jury below, and we cannot substitute our view for that of the jurors who heard the evidence and observed the witnesses.

### IV. CHARGE TO THE JURY

The trial court erroneously charged the jury with respect to the defendants' position as to the bills of lading. While Judge Bonsal did say that the defendants denied their falsity, he further added: "As. I understand it, they contend here really that they were doing the best they could and that they thought that they should come out with something that was approximating at least the estimate, the City's estimate of the cost of the job." However, after objection to this characterization of the position of the defense was made, the trial judge corrected his statement and said: "Then, from the defense side, the defendants are contending here that the hours they did expend on these jobs did total the hours that were in the bills of lading, and I will tell you that that is what the defendants are so contending." Appellants argue that the judgment below should be reversed because the erroneous charge was never expressly re-

tracted by the trial judge but was merely supplemented.

 We cannot agree that reversal is required on these facts. In addition to the corrective charge, the original erroneous charge was not one of law but of fact, and it had been preceded by the statement:

> It may help you in your own recollection if I review what I understand to be the contentions here. But this again is a matter for your recollection. I am doing it only perhaps to help you with your recollection.[3]

In light of the prior admonition and the subsequent correction, we cannot find the error so prejudicial as to require a new trial. As the appellants admit, the testimony of defendant Candella that the bills of lading were in fact accurate made the position of the appellants abundantly clear. It is equally clear that the jury did not accept it.

Affirmed.

---

3. Cases involving erroneous charges of applicable principles of law are not apposite, since the jury is bound by the law enunciated by the judge. Where, as here, the mis-statement is one of facts, the jurors' own recollections of the facts as testified to are controlling and, as we have indicated, they were so advised by the court.