UNITED STATES of America,
Plaintiff,

v.

James G. SYNODINOS, (etc.), George Milton Specht, and Joe Cartelli,
Defendants.

No. CR 56-63.

United States District Court
D. Utah,
Central Division.

June 11, 1963.

William T. Thurman, Salt Lake City, Utah, for plaintiff.

Herbert M. Jones, Las Vegas, Nev., Hanson & Baldwin, Salt Lake City, Utah, for defendants.

CHRISTENSEN, District Judge.

The Grand Jury has charged the defendants in Counts One to Four of an Indictment with violations of 18 U.S.C.A. § 1084,[1] in Count Five with the violation of 47 U.S.C.A. §§ 203(a),[2] 501,[3] and in Count Six with conspiracy to violate 18 U.S.C.A. § 1084, supra, and § 1952.[4]

The defendants have moved to dismiss the indictment against them and for a change of venue as to the District of Nevada for the trial of any charges

---

1. The pertinent part of this section reads:
   "§ 1084. Transmission of wagering information; penalties
   "(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both."

2. Pertinent portions of § 203 are:
   "(a) Every common carrier, except connecting carriers, shall, within such reasonable time as the Commission shall designate, file with the Commission and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers for interstate and foreign wire or radio communication between the different points on its own system, and between points on its own system and points on the system of its connecting carriers or points on the system of any other carrier subject to this chapter when a through route has been established. * * *
   "(c) No carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in such communication unless schedules have been filed and published in accordance with the provisions of this chapter and with the regulations made thereunder; and no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect * * * or (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule. * * *"

3. "§ 501. General penalty
   "Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this chapter prohibited or declared to be unlawful, or who willfully and knowingly omits or fails to do any act, matter, or thing in this chapter required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this chapter, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both * * *."

4. "§ 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises
   "(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
   "(1) distribute the proceeds of any unlawful activity; or
   "(2) commit any crime of violence to further any unlawful activity; or
   "(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity,
   and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
   "(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which a Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion or bribery in violation of the laws of the State in which committed or of the United States. * * *"

not dismissed. The alleged grounds relied upon are as follows:

1. That if any activity of the defendants was in violation of 18 U.S.C.A. § 1084, said activity was committed and took place in the District of Nevada.

2. That the overt acts alleged in Count Six of the indictment as respects the defendants occurred primarily in the District of Nevada and in certain instances wholly outside the District of Utah, and that no part of any conspiracy, if any there be, was formed in the District of Utah, and all overt acts if any, involving the defendants, occurred in districts other than the District of Utah.

3. That the defendants are entitled to a dismissal of the indictment since Congress has by 18 U.S.C.A. § 1084 made the "use" of interstate wire facilities a crime, and consequently the crime occurred as to any violation of 18 U.S.C.A. § 1084 where defendants "used" the interstate wire facilities, and defendants have reason to believe that all of the evidence before the Grand Jury was to the effect that defendants' use, if any, of any interstate wire facilities occurred in the District of Nevada.

4. That a transfer of venue is proper in that the offenses as alleged in this indictment were allegedly committed in more than one district (Utah and Nevada), and in the interest of justice the proceedings should be transferred for reasons set out in affidavits and on grounds stated in the defendants' memorandum in support of the motion.

5. There exists in this district so great a prejudice against the defendants that they cannot obtain a fair or impartial trial.

6. That counsel for the United States has selected the District of Utah over the District of Nevada because they deem that prosecution of the alleged offense in Utah is more likely to result in a conviction than if the prosecution remains in Nevada.

It seems manifest from the text of § 1084 standing alone, as well as from its legislative history, the other statutory provision which must be read in pari materia, and from the interpretation given this and related statutory provisions in the better considered decisions, that the charges contained in the first four counts of the indictment properly may be prosecuted in the District of Utah as well as in the District of Nevada. Actually the center of gravity, so to speak, of these charges is in the District of Utah where the use of the interstate wire facilities had its ultimate impact, i. e., it was here that the messages comprising the interstate communication of wagering information were actually received according to the allegations of the indictment.

Section 1084 is titled "Transmission of wagering information; penalties". This statute does not penalize the mere use of the telephone instrument. If it did, there would be some logic to the defendants' contention that the offense was not a continuing one which could be committed in both the district where the use occurred and the district where the communication was received. On the contrary, the proscribed activity is the use of a wire communication facility "for the transmission in interstate or foreign commerce of bets or wagers * * *." It seems self-evident that an essential ingredient of the offense is a communication from one state into or through another over the wire facility. The continuing nature of the offense provided the grounds for the court in United States v. Yaquinta, 204 F.Supp. 276 (D.C.N.D.W.Va., 1962), to recognize an interstate character of a telephone conversation made from one point in West Virginia to another via facilities located in another state. But there is yet a clearer foundation for prosecution under the statute where the messages originate in one state and are received in another.

The significance of the use of a facility for conveyance or transmission is pointed out by United States v. Ross, 205 F.2d 619 (10th Cir. 1953). Venue there was limited in the opinion of the court to the district where mail was deposited. The prosecution, however, was under 18 U.S.C.A. § 1461, providing that "[w]hoever knowingly deposits for mailing or delivery" non-mailable matter is guilty of an offense. Judge Phillips' explanation of the court's ruling in favor of the defendant is informative here, for he said:

"We think there is a clear distinction between a deposit for mailing or delivery and the use of the mails. The use of the mails continues from the point of deposit to the point of delivery. Crimes involving the use of the mails are therefore continuing crimes, but the unlawful act defined in § 1461 is the deposit for mailing and not a use of the mails which may follow such deposit. That act is complete when the deposit is made and is not a continuing act. It does not involve a use of the mails."

It is quite apparent that the prohibited act in our case was not completed by the mere placing of a telephone call, but was complete only when there had been an interstate communication of wagering information by the use of wire facilities. The defendants would have the act under which they are charged read as if the mere placing of a call were prohibited. If that premise were true, some of the cases that they rely upon would be in point; but in view of the actual wording of the statute itself their argument is far from realistic.

The statute is so clear on this point that to go beyond its terms would seem unnecessary; yet if there could be any doubt, 18 U.S.C.A. § 3237 [5] would seem to resolve it.

The first paragraph of this section applies to precisely the type of offense created by 18 U.S.C.A. § 1084, for in order to knowingly use a wire communication facility "for the transmission in interstate * * * commerce of bets or wagers" it would be essential that the offense would "[begin] in one district and [be] completed in another". Further confirmation, if deemed necessary, may be found in the additional provision that "[a]ny offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense * * *." Even though at first glance the statutory phrase "transportation in interstate commerce" may not appear to encompass the use of wire facilities for the transmission of messages from one state to another, the definition of transportation would be technically inclusive and in keeping with the spirit motivating the statutory enactment. United States v. Smith, 209 F.Supp. 907 (D.C.E.D.Ill., 1962).

Moreover, 18 U.S.C.A. § 1081 at the time of the enactment of § 1084 was amended to provide a definition of the terms "wire communication facility" as used in § 1084. To limit the latter section in the manner suggested by the defendants would in effect completely ignore the definition of "wire communication facility" as including all instrumentalities, personnel and services used or useful in the transmission of writings, signs, pictures, and sounds of all kinds by aid of wire, cable, or other light connection, "between the points of origin and reception of such transmission". Section 1084 makes the use of "wire communication facilities" and not the use of the telephone instrument, or the

5. 18 U.S.C.A. § 3237 provides:

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

mere placing of a call, the essence of the alleged offenses.

The statute involved in the case of United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236 (1944), a case strongly relied upon by the defendants, appears to me to be inapposite to the one with which we are concerned. In any event, as pointed out in the reviser's note to § 3237 in U.S.C.A., the last paragraph of the revised section was added to meet the situation created by the decision of the Supreme Court of the United States in Johnson, which turned on the absence of a special venue provision in the Dentures Act, § 1821 of Title 18. The revised section removes all doubt as to the venue of continuing offenses and makes unnecessary special venue provisions except in cases where Congress desires to restrict the prosecution of offenses to particular districts. Eightieth Congress, House Report No. 304.

Travis v. United States, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), is clearly distinguishable, since venue under the facts of that case was held to be determined by the requirements of § 9 (h) of the National Labor Relations Act that the affidavit be "on file with the Board" in Washington, D. C. Hence a single locus of the offense under 18 U.S. C.A. § 1001 was held to be established by the placing of the affidavit on file.

The Court said:

> "Section 9(h) of the National Labor Relations Act, with which we are concerned, did not require union officers to file non-Communist affidavits. If it had, the whole process of filing, including the use of the mails, might logically be construed to constitute the offense. But this statutory design is different. * * * The filings are conditions precedent to a union's use of the Board's procedures." 364 U.S. 631, 635, 81 S.Ct. 358, 361.

Krogmann v. United States, 225 F.2d 220 (6th Cir., 1955), involving prosecution for the "giving of a bribe", and other cases cited by the defendants are, like Travis, wide of the mark, because they involve essentially different types of statutes.

Accordingly, I have concluded that there is no merit to the contention of defendants that venue or jurisdiction does not lie in this district as to counts one to four, inclusive, of the indictment. The motion to dismiss these counts is denied.

■ Whether the defendants rely upon claimed lack of alleged facts to constitute an offense, or claimed lack of venue or jurisdiction, the motion to dismiss must also be denied as to Count Five. 47 U.S.C.A. § 203(a), (c) and § 501; United States v. Giles, 300 U.S. 41, 57 S.Ct. 340, 81 L.Ed. 493 (1937). And as to Count Six. 18 U.S.C.A. § 371; Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

Even though venue has been properly laid in the Federal District Court of Utah, it would be within the discretion of this court to transfer on the motion of defendants set forth in Counts Four and Five to the Federal District Court of Nevada, if the court were satisfied within reason that there exists so great a prejudice that defendants could not have a fair and impartial trial. Rule 21, Federal Rules of Criminal Procedure.

■ In support of their motion for a change of venue the defendants say that the indictment was followed by such substantial newspaper, radio, and television publicity as to prejudice the defendants, and that the "ethnic and cultural conditions in Utah are particularly unfavorable to gambling".

The affidavits filed by the respective parties, when compared, disclose that the newspaper accounts of the indictment in Utah were merely an objective reporting of the court record and that there were more prominent newspaper accounts published in Nevada concerning the indictment. The defendants' showing as to newspaper, radio and television accounts

484

falls short of any justification for this court to exercise its discretion to order a change of venue. At most it would commend a circumspect examination of prospective jurors at the time of the trial irrespective of whether it was held in Utah or Nevada.

■ A further contention of the defendants is that there is an "indigenous prejudice", in Utah, the argument being in essence that the case should be transferred for trial in Nevada in order to have it tried in a jurisdiction where gambling is legal and where the people presumably would be more sympathetic toward gambling.

The Federal statute does not prohibit gambling as such but it is a prohibition against the transmission of certain messages interstate among other things because of the impact such transmission may have within the states where such messages are received. No matter what the attitude of the respective populations may be toward gambling, presumably they both would recognize the controlling federal policy in support of the congressional enactment. Transfer to a state the citizens of which would not recognize such Federal policy of course would not be a proper objective. To justify the transfer of this case on the ground stated would in consistency involve the transfer of all similar cases brought in the great majority of districts where state laws preclude gambling to the few areas such as Nevada, where gambling may be legalized. The very proposition seems self defeating.

I feel confident that in both Utah and Nevada the public policy and the attitude of the jurors would be that if the defendants were proved beyond a reasonable doubt to have violated the statute with reference to the transmission in interstate commerce of gambling information, they should be convicted, and if there were any reasonable doubt about their guilt of the Federal offense charged, they should be acquitted, irrespective of state laws concerning gambling. I have already indicated in my comments in open court concerning the motion for change of venue other reasons why I believe the motion is without merit. The motion for change of venue as to all grounds and as to each count, is denied.

Pleas of not guilty have already been entered, subject to the ruling of the court on these motions. Disposition of these motions now having been made, the case will be set for trial during the fall jury calendar.