No. 426. KELLEY v. UNITED STATES. C. A. 2d Cir. Certiorari denied. *Edward Bennett Williams* for petitioner. *Solicitor General Griswold, Assistant Attorney General Vinson, Beatrice Rosenberg,* and *Marshall Tamor Golding* for the United States. ▮

MR. CHIEF JUSTICE WARREN, dissenting.

The Court, by denying certiorari in this case, has ignored the interrelationship between its recent decision in *Marchetti* v. *United States,* 390 U. S. 39 (1968), and the well-established rule that the Government cannot comment upon the accused's decision to stand mute. See *Wilson* v. *United States,* 149 U. S. 60 (1893). Although I was the lone dissenter in *Marchetti,* see 390 U. S., at 77–84, I am puzzled by the Court's failure to apply the principles it so recently advocated.

Petitioner stands convicted of four related violations of the statutes governing those engaged in the business of accepting wagers: use of interstate facilities for transmitting wagering information in violation of 18 U. S. C. § 1084; use of interstate facilities with intent to carry on an unlawful gambling activity in violation of 18 U. S. C. § 1952; failing to pay the special tax imposed upon gamblers by 26 U. S. C. § 4401; and failing to register as a gambler as required by 26 U. S. C. §§ 4411–4412.[1] The Court of Appeals, on the authority of *Marchetti,* reversed his convictions on the tax and registration counts but affirmed his convictions imposed upon the other two counts. *United States* v. *Kelley,* 395 F. 2d 727 (C. A. 2d Cir. 1968).

In *Marchetti* the Court held that, given the widespread prohibition of gambling activities by both the state and federal sovereigns, the registration and taxation provisions of §§ 4401 and 4411–4412 compelled a gambler to

---

[1] Petitioner received the maximum sentence on each count, the sentences to run consecutively.

admit that he was engaging in or planned to engage in unlawful activities. Specific reference was made to the criminal sanctions imposed by both § 1084 and § 1952, the two sections which form the basis of petitioner's outstanding convictions. See 390 U. S., at 44. According to the *Marchetti* majority, the Government had in essence said to the accused gambler: either register and pay the tax, thereby exposing your activities, or be prosecuted for failing to incriminate yourself.

I find this rationale equally applicable to this case. The Government in the first two counts indicted petitioner for interstate gambling, yet at the same time in the last two accused him of failing to incriminate himself on the first two counts. Had government counsel introduced evidence that petitioner, when asked if he was a gambler, refused to reply and then argued to the jury that petitioner's silence indicated guilt, I have no doubt that a reversal would be mandated. See *Miranda* v. *Arizona*, 384 U. S. 436, 444, 468, n. 37 (1966).[2] I have difficulty understanding why this same principle is not involved where the Government joins the tax and registration offenses with the substantive gambling offenses, for evidence introduced under counts three and four is a formal government comment on petitioner's failure to confess to an essential element[3] of counts one and two.[4]

---

[2] Petitioner's trial began in August 1966 and was thus after the applicable date of *Miranda*. See *Johnson* v. *New Jersey*, 384 U. S. 719 (1966).

[3] The essential element is that the accused be a professional gambler. Section 1084 applies to individuals "engaged in the business of betting or wagering"; § 1952 refers to the use of interstate facilities to carry on "any business enterprise involving gambling"; and §§ 4411 and 4412 impose a tax and registration requirement upon those "engaged in the business of accepting wagers" as defined in § 4401.

[4] The Court of Appeals intimated that petitioner did not properly preserve his present claim as he failed to move to sever the gambling

The joinder of the tax and registration counts with the interstate gambling charges also had the result of strengthening a relatively weak case on the gambling charges by combining those charges with a strong case on failure to register and pay the tax. The Government's proof disclosed that petitioner, a professional bookmaker, instructed his clients to call a number at a New York City hotel and ask for a fictitious name. The hotel operator would inform the prospective bettor that his party was not in; the bettor would thereupon give the operator a code name previously agreed upon between the bettor and petitioner. Thereafter, petitioner would call the bettor from his home in Brooklyn and consummate the wager.[5]

To prove its charges on the third and fourth counts the Government was required to show only that petitioner received wagers and had neither registered nor met his tax liability. The indictment on the first and second counts was based upon telephone calls made by bettors to the New York City number from outside New York State. The Government's theory of prosecution was that petitioner caused the out-of-state bettors to use

counts from the registration and tax counts. 395 F. 2d, at 729. However, prior to trial petitioner moved to dismiss the indictment on the theory that he could not be constitutionally convicted for violations of §§ 4401 and 4411–4412 on grounds subsequently adopted in *Marchetti;* petitioner added that combining charges of failing to register and pay the tax with the substantive gambling charges constituted a comment upon his failure to incriminate himself and therefore asked that the entire indictment be dismissed. On the day of trial this request was renewed. Certainly, these steps were adequate to preserve petitioner's claim.

[5] The Government chose to place venue in the Southern District of New York, the situs of the bettors' telephone calls, rather than in the Eastern District, the district from which the return calls were made. See *United States* v. *Synodinos,* 218 F. Supp. 479 (D. C. Utah 1963); 18 U. S. C. § 3237.

telephone facilities to place their wagers. See 18 U. S. C. § 2 (b). The Government thus had to convince the jury that petitioner was the causative factor prompting the calls,[6] proof not required for the third and fourth counts. Petitioner placed his defense upon the argument that it was unlikely that he, a lowly bookie, caused his customers, men of substantial means, to make the telephone calls. It is at least arguable that the jury, faced with overwhelming evidence of petitioner's guilt of the registration and tax charges, allowed this fact to influence their deliberations concerning the interstate gambling offenses. Furthermore, this risk was compounded by the fact that the trial judge told the jury that, although petitioner was charged with four distinct offenses, these offenses were "interrelated violations of Federal law." Simply, the Government was able to show via a prosecution for offenses which this Court has held constitutionally invalid that petitioner had violated the law; this demonstration may well have induced the jury to conclude that petitioner was guilty of the other charges as well. Cf. *Michelson* v. *United States,* 335 U. S. 469 (1948).

Furthermore, the joinder of these four charges can be viewed as a classic example of the improper use of "other-crimes" evidence.[7] I have in mind the following situa-

---

[6] The trial judge charged: "Thus the government has attempted to show that the defendant devised a method whereby he caused these individuals to phone the Eldorado number, ask for Mr. Mellon, which the government contends was the name the defendant supplied to them and which was the trigger for his return call to them with the specific wagering information or to accept the particular bet, and when we say the defendant caused the telephone to be used we do not mean that he coerced the bettors."

[7] Typically, other-crimes evidence is introduced to establish intent, design, and system on the part of the accused where the other crimes are similar to the crimes for which he is charged. See *Lisenba* v. *California,* 314 U. S. 219, 227 (1941).

tion. An individual presently charged with interstate gambling has previously suffered a conviction prior to the Court's decision in *Marchetti* for failure to register and pay the tax. Would the Government be able to introduce this previous conviction in the accused's post-*Marchetti* trial although the Court has determined that the statutory scheme under which this conviction was procured is unconstitutional? It appears that by joining the gambling offenses with the registration and tax offenses the Government has been able to utilize just such a procedure.

I would grant certiorari to resolve these issues.

