UNITED STATES of America Appellee,

v.

Silverio RAMIREZ and Angelica Vitug Defendants–Appellants.

Docket Nos. 03–1262–CF(L), 04–0726–CR(CON).

United States Court of Appeals, Second Circuit.

Argued: March 4, 2005.

Decided: Aug. 23, 2005.

Theodore S. Green, Green & Willstatter, White Plains, NY, for Defendant–Appellant Angelica Vitug.

Norman Trabulus, Garden City, NY, for Defendant–Appellant Silverio Ramirez.

Eric B. Bruce, Assistant United States Attorney (Katherine Polk Failla, Assistant United States Attorney, of counsel), for David N. Kelley, United States Attorney for the Southern District of New York, for Appellee.

Before: WALKER, Chief Judge, CARDAMONE and B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

Defendant–Appellant Angelica Vitug appeals from her conviction of a total of fourteen counts of visa fraud, 18 U.S.C. § 1546, making false statements to an agency of the United States, 18 U.S.C. § 1001, mail fraud, 18 U.S.C. § 1341, and conspiracy to commit those offenses, 18 U.S.C. § 371, before the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*). Vitug contends that venue was not properly laid in the Southern District of New York with respect to ten of the substantive counts for which she was convicted.[1] We agree as to counts Six through Nine for visa fraud, and counts Eighteen and Twenty–One for mail fraud; accordingly, we vacate Vitug's conviction as to those counts. We affirm as to the remaining challenged counts. We remand for further proceedings.

## BACKGROUND

Vitug, an endocrinologist, and her co-defendant, Silverio Ramirez, an immigration lawyer, were charged on October 17, 2002 with a variety of offenses stemming from their efforts to obtain fraudulent visas for Ramirez's clients. The indictment,

---

1. We treat Vitug's other grounds for appeal, as well as the claims of her co-defendant, in a separate summary order. Defendant–Appellant Ramirez does not join Vitug's venue claims.

filed in the Southern District of New York, alleged that Ramirez and Vitug falsely represented to the Immigration and Naturalization Service ("INS") and the United States Department of Labor ("U.S.DOL") that Ramirez's clients would have jobs in the United States with sponsoring employers. Vitug allegedly participated in the scheme by submitting documents to the U.S. DOL and INS representing that her medical practice would employ Ramirez's clients in jobs that did not exist. Ramirez and Vitug were tried together, and on December 17, 2002, they were convicted on all counts of the indictment. On April 23, 2003, the District Court sentenced Vitug principally to five months' imprisonment, to be followed by three years' supervised release. Vitug has completed serving her term of imprisonment and is presently serving her term of supervised release.

Viewing the facts in the light most favorable to the government, *see United States v. Delia*, 944 F.2d 1010, 1012 (2d Cir.1991), the evidence at trial showed that Ramirez and Vitug engaged in a fraudulent scheme involving two kinds of work visas. First, they procured fraudulent "H–1B" visas for clients who had lawfully entered the United States and wished to remain temporarily once their tourist visas had expired.[2] *See* 8 U.S.C. § 1184(c)(1). To qualify for an H–1B visa, an alien must have both "highly specialized knowledge" of a particular occupation and a promise of employment from an American employer for a paid position. 8 U.S.C. §§ 1182(n)(1), 1184(i)(1)(A). The American employer must petition for the visa on the alien's behalf. Once issued, the visa generally permits the alien to remain in the United States for a limited number of years, and only as long as he or she is working for the sponsoring employer. In order to petition the INS for an H–1B visa, the sponsoring employer must first file a *Labor Condition Application* ("LCA") with the U.S. DOL. The employer then files with the INS a Form I–129 Petition, along with the approved LCA form and other supporting documents.

In February 1997, Ramirez filed with the INS four Form I–129 Petitions and attachments, certifying that Vitug's employer, Brooklyn Medical Group ("BMG"), would hire four of Ramirez's clients to work as "Public Health Educators" at BMG. Vitug signed the Form I–129 Petitions as well as supporting documents stating that she was a "Founding Partner" of BMG and that BMG currently employed a "Public Health Educator (Diabetes Educator)." The evidence at trial established that Vitug was not a founding partner of BMG, that BMG had never employed a "Public Health Educator," and that Vitug lacked hiring authority. The evidence also showed that Vitug signed the I–129 Petitions in New Jersey and that they were filed with an INS branch office in Vermont. Included among the attachments to the I–129 Petitions were LCA forms that Vitug had previously signed in New Jersey and sent to the Manhattan office of the U.S. DOL for approval.

The second type of fraud involved the submission of false Form ETA–750 applications to the U.S. DOL. Form ETA–750s enable aliens to obtain visas that permit them to remain in the United States indefinitely. *See* 8 U.S.C. § 1182(a)(5)(A). These visas, too, require sponsorship by an American employer, and the sponsoring employer must show that efforts were made, unsuccessfully, to recruit American citizens for the specific position to be filled

---

**2.** The informal term "H–1B" visa derives from Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act, which sets out the requirements for this type of visa. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b).

by the alien. Red 15 The employer submits a Certified Job Notice and a Recruitment Report to prove that recruitment efforts were made.

In May 1997 and December 1999, Vitug signed and submitted to the U.S. DOL two Form ETA–750s, a Certified Job Notice, and a Recruitment Report, on behalf of two of Ramirez's clients who would purportedly work as a "Controller" and an "Office Manager" in Vitug's private New Jersey medical practice, which was curiously located in Ramirez's New Jersey law office. Testimony by Ramirez's secretary called these positions into doubt, and evidence indicated that one of these individuals never actually worked for Vitug, while the other worked for her as a chauffeur on Saturdays. Moreover, Ramirez's secretary testified that, although an advertisement was placed in a newspaper for one of the positions, she overheard Ramirez tell Vitug, in substance, that this step was pretextual and that she should look for flaws to disqualify applicants. The Form ETA–750s, the Certified Job Notice, and the Recruitment Report were initially filed with the New Jersey Department of Labor ("N.J.DOL"), which later forwarded the documents to the U.S. DOL's Manhattan office.[3]

At the close of the government's case, Vitug moved to dismiss under Rule 29, arguing, among other things, that venue did not properly lie in the Southern District of New York for certain counts. *See* Fed.R.Crim.P. 29. The District Court initially reserved, but then denied, the motion when it was renewed at the close of the evidence, holding that "[v]iewed in the light most favorable to the government, a preponderance of the evidence clearly demonstrates that essential elements of

the conduct constituting the charged offenses occurred in the Southern District of New York, notwithstanding the fact that some essential elements may also have occurred elsewhere." This appeal ensued.

## DISCUSSION

 Both the Sixth Amendment and Federal Rule of Criminal Procedure 18 require that defendants be tried in the district where their crime was "committed." U.S. Const. amend. IV, Fed. R.Crim.P. 18; *see also* U.S. Const. art. iii, § 2, cl. 3. When a federal statute defining an offense does not specify how to determine the location where the crime was committed, "[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6–7, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) (quoting *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946)). To carry out that task, we must "initially identify the conduct constituting the offense," and then "discern the location of the commission of the criminal acts." *United States v. Rodriguez–Moreno*, 526 U.S. 275, 279, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999). As the Supreme Court explained in *Rodriguez–Moreno*, it is often helpful to look to the verbs of a statute in identifying the conduct that constitutes an offense, but the "verb test" should not be applied "to the exclusion of other relevant statutory language." *Id.* at 280, 119 S.Ct. 1239. Venue is proper only where the acts constituting the offense—the crime's "essential conduct elements"—took place. *Id.; see also United States v. Smith*, 198 F.3d 377, 384 (2d Cir.1999).

---

**3.** The documents were first filed with the N.J. DOL pursuant to former 20 C.F.R. § 656.20 *et seq.,* through which the U.S. Secretary of Labor delegated authority to the state departments of labor to carry out the functions described in 8 U.S.C. § 1182(a)(5)(A).

When a crime consists of a single, non-continuing act, the proper venue is clear: The crime "is 'committed' in the district where the act is performed." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir.1989). In some cases, however, "the [C]onstitution does not command a single exclusive venue." *United States v. Reed*, 773 F.2d 477, 480 (2d Cir.1985). Thus, where "the acts constituting the crime and the nature of the crime charged implicate more than one location," *id.*, venue is properly laid in any of the districts where an essential conduct element of the crime took place. *See Rodriguez–Moreno*, 526 U.S. at 281, 119 S.Ct. 1239 ("[W]here a crime consists of distinct parts which have different localities[,] the whole may be tried where any part can be proved to have been done.") (quoting *United States v. Lombardo*, 241 U.S. 73, 77, 36 S.Ct. 508, 60 L.Ed. 897 (1916)). Congress has codified the rule that continuing offenses may be prosecuted wherever a proscribed act occurs in the first paragraph of 18 U.S.C. § 3237(a):

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be ... prosecuted in any district in which such offense was begun, continued, or completed.[4]

Although the Supreme Court has recognized Congress's power to define offenses as continuing, it has been wary of extending that label too broadly. *See* *United States v. Johnson*, 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944) (stating that a cautious interpretive approach is "more consonant with the considerations of historic experience and policy which underlie [the venue] safeguards in the Constitution"). Accordingly, we suggested in *United States v. Saavedra*, 223 F.3d 85 (2d Cir.2000), that when venue may properly lie in more than one district under a continuing offense theory, we should also ask "whether the criminal acts in question bear 'substantial contacts' with any given venue." *Id.* at 93 (quoting *Reed*, 773 F.2d at 477). The substantial contacts test "takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." *Id.*

The government has the burden of proving that venue is proper. *Beech–Nut*, 871 F.2d at 1188. Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence. *See Smith*, 198 F.3d at 384. We review the sufficiency of the evidence as to venue in the light most favorable to the government, crediting "every inference that could have been drawn in its favor." *United States v. Rosa*, 17 F.3d 1531, 1542 (2d Cir.1994). Because venue challenges raise questions of law, we review the District Court's legal conclusions *de novo*. *See United States v. Svoboda*, 347 F.3d 471, 482 (2d Cir.2003).

---

4. The second paragraph of § 3237(a) goes on to specify certain types of offenses that are *per se* continuing:

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

*Id.; see United States v. Brennan*, 183 F.3d 139, 146–48 (2d Cir.1999) (discussing the scope and history of the second paragraph of § 3237(a)).

Vitug argues that the District Court erred in finding that she could be prosecuted in the Southern District of New York for several charges of visa fraud (counts Six through Nine), making false statements (counts Eleven through Fourteen), and mail fraud (counts Eighteen and Twenty–One). Because "venue must be proper with respect to each count," we may conclude that venue was proper as to some counts but not as to others. *Beech–Nut*, 871 F.2d at 1188.

## A. Visa Fraud (Counts 6–9)

■ Counts Six through Nine charged Vitug under 18 U.S.C. § 1546 with subscribing as true and presenting a fraudulent "Form I–129 Petition . . . and attachments" for four of Ramirez's clients on the "approximate date" of February 7, 1997. As the Supreme Court has said, the first step in a venue inquiry is to "identify the conduct constituting the offense." *Rodriguez–Moreno*, 526 U.S. at 279, 119 S.Ct. 1239. 18 U.S.C. § 1546(a) provides, in relevant part, that:

> [w]hoever knowingly *makes under oath,* or . . . knowingly *subscribes as true,* any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly *presents any such application,* affidavit or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact [will be subject to specified penalties].

(emphases added). Here, the verbs of the statute exhaustively identify the conduct constituting the offense. The statute proscribes the making of, or subscribing to, false statements under oath, as well as the

presentation of documents containing such statements. Accordingly, venue would be proper if any of these "essential conduct elements" occurred in the Southern District of New York. *Rodriguez–Moreno*, 526 U.S. at 280, 119 S.Ct. 1239.

The evidence at trial showed that Vitug signed the I–129 Petitions in New Jersey and that they were filed, with attachments, at an INS branch office in Vermont. Vitug thus contends that while venue for Counts Six through Nine would have been proper in New Jersey or Vermont, she could not be prosecuted in the Southern District of New York.

The government responds that because at least one of the attachments to each of the Form I–129 Petitions was sent to the Manhattan branch of the U.S. DOL for approval before being returned to New Jersey for inclusion as attachments to the Form I–129 Petitions that were filed in Vermont, venue was proper in the Southern District of New York. The government put forth evidence at trial showing that Vitug had previously submitted four LCA forms to the Manhattan U.S. DOL.[5] Moreover, a government witness testified that INS adjudicators review and rely upon LCA forms in deciding whether to approve a Form I–129 Petition. Based on this evidence, the government argues that a rational juror could have concluded by a preponderance of the evidence that venue was proper since documents that were later appended to the Form I–129 package were presented and acted upon in the Southern District of New York.

We disagree. First, the counts in question specifically charged visa fraud in connection with the submission of the Form I–129 packages in Vermont. Vitug was not

---

**5.** Count Ten of the indictment charged Vitug with making false statements by submitting the LCAs to the Manhattan branch of the DOL

on the "approximate date" of January 30, 1997. Vitug does not challenge venue as to that count.

charged in connection with assembling the forms prior to their submission. Even assuming *arguendo* that steps taken in compiling the Form I–129 packages could have given rise to a violation of the visa fraud statute, the issue is not before us since the government did not charge Vitug with violating the statute on that basis or argue that theory at trial. Vitug's case closely parallels *Beech–Nut.* There, the defendants were charged under the Federal Food, Drug, and Cosmetic Act with "[t]he introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated or misbranded." 21 U.S.C. § 331(a). Although they were prosecuted in the Eastern District of New York, their only connections with that venue were that they had placed telephone orders for adulterated apple juice concentrate to suppliers there and had mailed the suppliers confirmations of these orders. *Beech–Nut,* 871 F.2d at 1190. We held that "these communications were not part of the offense of introducing the offending juice into commerce but were merely prior and preparatory to that offense." *Id.* "Whether the crime be continuing or non-continuing," we concluded, "venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense." *Id.; see also United States v. Bozza,* 365 F.2d 206, 220–21 (2d Cir.1966) (finding venue improper in a district in which a telephone call was made to arrange for the receipt of stolen goods, but the receipt of property itself occurred in another district).

As in *Beech–Nut,* Vitug's act of sending the LCA forms to the Manhattan branch of the U.S. DOL prior to assembling her Form I–129 package and submitting it to Vermont was "preparatory to the offense,"

not part of it. *Beech–Nut,* 871 F.2d at 1190. Vitug was charged in Counts Six through Nine with "knowingly presenting" a fraudulent "Form I–129 Petition . . . and attachments" to the Vermont INS on approximately February 7, 1997. She was not charged with committing visa fraud by filing false LCA forms with the Manhattan branch of the U.S. DOL, a separate event that occurred prior to that offense and in preparation for it.[6] The government argues that because filing and receiving approval for a LCA form was a "condition precedent" to the submission of her Form I–129 Petition package, it was part of the unlawful presentation of the Form I–129 package in Vermont. Appellee Letter Br., Apr. 18, 2005, at 2. The government's word choice underscores the weakness of its theory. Since the filing of the LCA forms *preceded* and was in preparation for the offense, it, consequently, was not part of the offense.

*Beech–Nut* makes clear that even if we were to treat visa fraud as a continuing offense under 18 U.S.C. § 3237(a), the result would be the same. As we explained, "[t]hough § 3237 traces an offense from inception to completion, its thrust is entirely forward-looking; it contains no retrospective provision establishing venue in a district in which the defendant performed only acts that preceded the inception of the offense." *Beech–Nut,* 871 F.2d at 1190. Thus, we need not decide whether Vitug's conduct constituted a continuing offense under § 3237(a), because even if it were, Vitug's act of presenting the LCA form to the U.S. DOL in Manhattan occurred before the charged offense had even "begun." 18 U.S.C. § 3237(a). Since venue is proper only where a crime is "committed," and *Beech–Nut* precludes considering preparatory acts in determin-

---

**6.** Count Ten indicates that these mailings were made on the "approximate date" of January 30, 1997—at least one week before the Form I–129 packages were sent.

ing the *locus delicti,* we vacate Appellant's conviction for Counts Six through Nine.

### B. Making False Statements (Counts 11–14)

■ Vitug was charged in Counts Eleven through Fourteen with making false statements under 18 U.S.C. § 1001 by presenting to the U.S. DOL two Form ETA–750 petitions, a Recruitment Report, and a Certified Job Notice, all of which contained false statements. 18 U.S.C. § 1001(a) provides, *inter alia,* that:

> whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States knowingly and willfully ... *makes or uses* any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry [shall be subject to certain delineated punishments].

(emphasis added). It is thus unlawful under § 1001 to make or use false statements in matters within the jurisdiction of the United States government. The evidence at trial established that each of the documents referenced in Counts Eleven through Fourteen contained materially false statements, that they were initially filed with the N.J. DOL, and that the N.J. DOL ultimately forwarded them to the U.S. DOL in Manhattan for processing.

Vitug argues that because she made the false statements in New Jersey, where she filed the documents, venue did not lie in the Southern District of New York. *United States v. Candella,* 487 F.2d 1223 (2d Cir. 1973), precludes her claim. In *Candella,* which was also a prosecution under 18 U.S.C. § 1001, defendants prepared and presented false documents to a New York City agency in Brooklyn.[7] The Brooklyn agency then forwarded the documents to the agency's central office in Manhattan, where the documents were necessarily audited and approved by the federal Department of Housing and Urban Development before the city agency could act on them. *See id.* at 1227. Invoking 18 U.S.C. § 3237(a), we found that although the offense may have "begun" in Brooklyn, it was not "completed" until the documents were processed in Manhattan because "[t]he statements continued to be false and continued to be within the jurisdiction of the United States not only when initially presented but also upon arrival in Manhattan." *Id.* at 1228. Since the offense was begun and completed in different places, it was continuing under § 3237(a) and could thus be prosecuted "in 'the whole area through which force propelled by an offender operates.'" *Id.* at 1228 (quoting *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944)). Because "[t]he force propelled here by the defendants immediately contemplated Manhattan," venue was proper in the Southern District of New York. *Id.*

Our case is congruent with *Candella.* Although Vitug filed the fraudulent documents in New Jersey, they were forwarded to a federal government agency in Manhattan. Vitug seeks to distinguish *Candella* on the ground that the N.J. DOL was not a "mere conduit" of the documents, but rather "had the duty to review and process them and the power to reject or deny them." Br. for Appellant at 34; *see also* former 20 C.F.R. § 656.20 *et seq.* Whether or not the New Jersey agency reviewed the applications, however, the fact is that it forwarded them to the U.S. DOL in the Southern District of New

---

**7.** Brooklyn lies within the Eastern District of New York, while Manhattan lies in the Southern District of New York.

York. As we said in *Candella,* "[a]lthough enough was done in the Eastern District [of New York] to constitute a crime there ... it does not follow that the crime then terminated, and that what transpired in Manhattan was irrelevant for venue purposes." *Candella,* 487 F.2d at 1228. Thus, venue was properly laid in the Southern District of New York because Vitug's "statements continued to be false and continued to be within the jurisdiction of the United States" when they finally reached Manhattan. *Candella,* 487 F.2d at 1228.

Under *Saavedra,* our inquiry should not end with finding that venue properly lay because Vitug committed a continuing offense. *Saavedra,* 223 F.3d at 92. *Saavedra* noted that while the substantial contacts test is not a "formal constitutional test," a court should consider whether that test is met in order to determine whether a given venue is "unfair or prejudicial" to the defendant. *Id.* at 93. Here, however, we need not be concerned about jeopardizing the values underlying the substantial contacts test because Vitug does not argue that being prosecuted in the Southern District of New York "imposed an additional hardship on [her], prejudiced [her], or undermined the fairness of [her] trial." *Id.* at 94. Accordingly, we affirm the District Court's judgment that venue was proper as to Counts Eleven through Fourteen.

### C. Mail Fraud (Counts 18 and 21)

Vitug also challenges venue with respect to two counts of mail fraud under 18 U.S.C. § 1341. That statute provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud ... for the purpose of executing such scheme or artifice or attempting to do so, *places* in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or *deposits or causes to be deposited* any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or *takes or receives* therefrom, any such matter or thing, or *knowingly causes to be delivered* by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing [shall be subject to certain specified penalties].

18 U.S.C. § 1341 (emphases added). Count Eighteen charged Vitug with mailing to the INS a fraudulent "Form I–129 Petition ... and attachments"—the same package that formed the basis for the charges of visa fraud in Counts Six through Nine. Count Twenty–One charged Vitug with mailing a Recruitment Report to the N.J. DOL, which was forwarded on to the U.S. DOL in Manhattan. This was the same document that supported the charge of making false statements in Count Eleven. Because the two counts require different analytical approaches, we consider them separately.

#### i. Count Eighteen

█ Here, as in Counts Six through Nine, the Form I–129 Petition and attachments were mailed from New Jersey to an INS office in Vermont; however, the LCA form, which was one of the attachments, had previously been sent to the Manhattan office of the U.S. DOL for approval. The question is therefore the same as in the earlier counts: Was Vitug's act of mailing the LCA form into New York merely "preparatory to the offense" of mailing the Form I–129 Petition and attachments, or was it part of the charged offense? *Beech–Nut,* 871 F.2d at 1190. To answer this question, we must again begin by determining what conduct 18 U.S.C. § 1341 proscribes. *See Rodriguez–Moreno,* 526

U.S. at 279, 119 S.Ct. 1239 ("[A] court must initially identify the conduct constituting the offense."). Only then may we consider whether, even assuming that Vitug was engaged in a continuing offense,[8] the mailing of the LCA form occurred before the offense had "begun," and thus, merely in preparation for it. 18 U.S.C. § 3237(a).

The government notes that in *Brennan,* we left open the question of whether, after *Rodriguez–Moreno,* venue is proper not only where "the defendant 'places,' 'deposits,' 'causes to be deposited,' 'takes,' or 'receives' mail, or 'knowingly causes' mail 'to be delivered,' " but also "in any district where any aspect of the 'scheme or artifice to defraud' was practiced." [9] *Brennan,* 183 F.3d at 145, 147 (quoting 18 U.S.C. § 1341) (internal citation omitted). The government now urges us to hold that it is proper. Because the scheme to defraud was devised at Ramirez's office in Manhattan and Vitug mailed the LCA form to the U.S. DOL in Manhattan, the government contends that the latter conduct was part of the charged offense and not preparatory to it. We disagree.

The Sixth Amendment speaks in terms of the district where a crime is "committed," and as the Supreme Court has repeatedly emphasized, the *"locus delicti* ... must be determined from the nature of the crime alleged and the location of the *act* or *acts* constituting it." *Rodriguez–Moreno,* 526 U.S. at 279, 119 S.Ct. 1239 (emphasis added) (quoting *Cabrales,* 524 U.S. at 6–7, 118 S.Ct. 1772 (quoting *Anderson,* 328 U.S.

at 703, 66 S.Ct. 1213).) Thus, defining the proper venue of a crime requires identifying where the physical *"conduct* constituting the offense" took place. *Id.* (emphasis added). Underscoring the importance of conduct, the Supreme Court repeated the phrase "conduct element" three times in the paragraph where it concluded that "a defendant's violent *acts* are essential conduct elements." *Id.* at 280, 119 S.Ct. 1239 (emphasis added).

While a scheme to defraud is certainly one of three essential elements of mail fraud, it is not an essential *conduct* element. *See United States v. Walker,* 191 F.3d 326, 334 (2d Cir.1999) ("To procure a conviction for mail fraud, the government must prove three elements: (1) a scheme to defraud victims of (2) money or property, though the (3) use of the mails."). As we explained in *Walker,* "[t]he first element focuses on the *intent* to harm" through fraud. *Id.* at 335 (emphasis added). It is the *mens rea* element of mail fraud. By contrast, it is the third element—misuse of the mails—that encompasses the "overt *act* of putting a letter into the postoffice." *Badders v. United States,* 240 U.S. 391, 393, 36 S.Ct. 367, 60 L.Ed. 706 (1916) (emphasis added); *see United States v. Muzii,* 676 F.2d 919, 920 (2d Cir.1982) (distinguishing between *mens rea* and *actus reus* ). Indeed, the plain meaning of the word "devise," which is defined as "to work out or create (something) by thinking; contrive; plan; invent," connotes contemplation, not action. Webster's Third Unabridged Dictionary

---

**8.** Vitug's mail fraud offense could only be considered continuing under the first paragraph of 18 U.S.C. § 3237(a), as this Court has held that mail fraud does not qualify as "use of the mails" under the second paragraph of the continuing offense statute. *See Brennan,* 183 F.3d at 146; *see also United States v. Kim,* 246 F.3d 186, 192 (2d Cir.2001) (*"Brennan* did not examine venue under the

first paragraph of § 3237(a), and its holding does not impact that paragraph ....").

**9.** We did not need to answer that question in *Brennan* because "the government [did] not contend that the defendants either devised or executed the fraud in the Eastern District of New York." *Brennan,* 183 F.3d at 145.

(2002); *see also* Jed S. Rakoff, *The Federal Mail Fraud Statute (Part I)*, 18 Duq. L.Rev. 771, 775 (1980) ("The first element of federal mail fraud—devising a scheme to defraud—is not itself conduct at all (although it may be made manifest by conduct), but is simply a plan, intention or state of mind, insufficient in itself to give rise to any kind of criminal sanctions."). One might easily devise a scheme to defraud entirely in one's head and not engage in any *act* proscribed by the statute until "plac[ing]" an item into the mail.[10] 18 U.S.C. § 1341.

The view that a fraudulent scheme is not itself proscribed conduct finds further support in the law of double jeopardy. It is well-established that each use of the mails constitutes a separate offense of mail fraud. *See Badders*, 240 U.S. at 394, 36 S.Ct. 367 ("[T]here is no doubt that the law may make each putting of a letter into the postoffice a separate offense."); *United States v. Eskow*, 422 F.2d 1060, 1064 (2d Cir.1970). In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court opined that "[t]he test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately.... If the latter, there can be but one penalty." *Id.* at 302, 52 S.Ct. 180 (internal quotation marks omitted). That an indictment may charge multiple counts of mail fraud based on the same scheme to defraud without running afoul of double jeopardy demonstrates that the mailing represents the "individual act[ ]" prohibited, not the fraudulent scheme. *See United States v. Gardner*, 65 F.3d 82, 85 (8th Cir.1995) (charging multiple mail fraud offenses based on the same fraudulent

scheme does not violate double jeopardy under *Blockburger* because "[u]nder 18 U.S.C. § 1341, it is not the plan or scheme that is punished, but rather each individual use of the mails in furtherance of that scheme.").

■ For these reasons, we conclude that "having devised or intending to devise a scheme or artifice to defraud," while an essential element, is not an essential *conduct* element for purposes of establishing venue. *Cf. United States v. Pace*, 314 F.3d 344, 349 (9th Cir.2002) (holding that venue for wire fraud, 18 U.S.C. § 1343, is not proper where a scheme to defraud was devised because "[a]lthough a fraudulent scheme may be an element of the crime of wire fraud, it is using wires and causing wires to be used in furtherance of the fraudulent scheme that constitutes the prohibited conduct."). Unless this limitation were respected, a defendant who devised a scheme to defraud while driving across the country could be prosecuted in virtually any venue through which he passed.

In seeking to extend the reasoning of *Rodriguez–Moreno* to our case, the government overlooks a critical difference between the charged offense here, § 1341, and the charged offense in that case, 18 U.S.C. § 924(c)(1). The question in *Rodriguez–Moreno* was whether the defendant could be prosecuted in New Jersey under § 924(c)(1) when he kidnapped the victim in Texas and carried him through numerous states, including New Jersey, but used a gun only in Maryland. *See Rodriguez–Moreno*, 526 U.S. at 276–77, 119 S.Ct. 1239. Section 924(c)(1) prohibits "us[ing] or carry[ing]" a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1). Emphasizing that "the

---

**10.** Moreover, even assuming that devising a scheme sometimes involves conduct beyond mere thought, the statute does not insist that a scheme actually have been devised; it only requires that the defendant "intend[ ]" to devise a scheme. 18 U.S.C. § 1341.

'verb test' ... cannot be applied rigidly," the Court found that § 924(c)(1) contained "two distinct conduct elements—... the 'using and carrying' of a gun and the commission of a kidnaping." *Id.* at 280, 119 S.Ct. 1239. Since one of the essential conduct elements of the offense had occurred in New Jersey, venue was proper there under 18 U.S.C. § 3237(a) even though the other essential conduct element had occurred elsewhere. *Id.* at 282, 119 S.Ct. 1239.

The government would have us conclude that "having devised or intending to devise a scheme or artifice to defraud" under § 1341 is comparable to "during a crime of violence" under § 924(c)(1). But whereas a crime of violence such as kidnaping is an act, and thus may qualify as an essential *conduct* element, for the reasons we have already identified, "having devised or intending to devise a scheme or artifice to defraud" is not. 18 U.S.C. § 1341. Thus, even taking into account the Supreme Court's instruction that "verbs are [not] the sole consideration in identifying the conduct that constitutes an offense," *Rodriguez–Moreno*, 526 U.S. at 280, 119 S.Ct. 1239, we hold that venue for mail fraud is limited to where "the defendant 'places,' 'deposits,' 'causes to be deposited,' 'takes,' or 'receives' mail, or 'knowingly causes' mail 'to be delivered.'" *Brennan*, 183 F.3d at 147.

This conclusion is consistent with the Supreme Court's admonition that provisions implicating venue are to be narrowly construed. *See Johnson*, 323 U.S. at 276, 65 S.Ct. 249. As we said in *Brennan*, the Supreme Court in *Johnson* "articulated a rule favoring restrictive construction of venue provisions: '[i]f an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it.'" *Brennan*, 183 F.3d at 146–47 (quoting *Johnson*, 323 U.S. at 276, 65 S.Ct. 249); *see also United States v. Cores*, 356 U.S. 405, 407, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958) ("Provided its language permits, the Act in question should be given that construction which will respect [the] considerations [raised in *Johnson*]."); *Brennan*, 183 F.3d at 147 (noting that, although a subsequent act of Congress overruled much of *Johnson*, Congress "could not and did not alter the constitutional and policy concerns underlying the Court's restrained view of venue; and it did not affect the general validity of the *Johnson* rule of construction."). *Johnson*'s rule of construction thus further reinforces our conclusion that venue for mail fraud is limited to where our Court prescribed in *Brennan*, 183 F.3d at 147.

Accordingly, Vitug began the offense under Count Eighteen when, on approximately February 7, 1997, she or Ramirez "place[d]" in a mailbox the "I–129 Petition ... and attachments," "knowingly caus[ing] them to be delivered" to the INS in Vermont. Having thus defined the conduct constituting the offense of mail fraud, the question is whether the mailing of the LCA form to the Southern District New York was part of the charged offense, or merely preparatory to it. *See Beech–Nut*, 871 F.2d at 1190. We see no basis for reaching a different conclusion than in Counts Six through Nine. Just as Vitug was not charged with committing visa fraud by filing false LCAs with the U.S. DOL in Manhattan, she was not charged with mail fraud on that basis either. Rather, the mailing of the LCA forms was a separate event that occurred prior to the charged offense and in preparation for it. For these reasons, venue was not properly laid in the Southern District of New York.

### ii. Count Twenty–One

■ Count Twenty–One, which charged Vitug with mail fraud in connection with the Recruitment Report that was mailed to the N.J. DOL and forwarded to the U.S. DOL in Manhattan, presents the same factual predicate as Count Eleven. Vitug argues that venue was not proper in the Southern District of New York because the mailing was "made in New Jersey to the New Jersey Department of Labor." Br. of Appellant Vitug at 34–35.

The government responds that, as with the counts of making false statements, *Candella* makes venue proper on a continuing offense theory. In order to find that *Candella* applies to Count Twenty–One, however, we would first have to determine whether mail fraud, like making false statements, may qualify as a continuing offense under the first paragraph of § 3237(a).[11] This would require deciding whether mail fraud, too, is "not unitary but instead spans space or time." *Beech–Nut*, 871 F.2d at 1188; *see also Smith*, 198 F.3d at 385 (same).

We need not reach this question, however, because the mail fraud statute itself explicitly makes venue proper where the defendant "knowingly causes to be delivered by mail or such carrier according to the direction thereon, *or at the place at which it is directed to be delivered by the person to whom it is addressed.*"[12] 18 U.S.C. § 1341 (emphasis added). Here, it is clear that Vitug caused the Recruitment Report to be delivered by mail to the N.J. DOL. The New Jersey agency—"the person to whom [the Recruitment Report was] addressed"—then directed it to be delivered to the U.S. DOL in Manhattan. Under the plain language of the statute, therefore, venue would be proper in the Southern District of New York as to this count provided that Vitug *knowingly* caused the Recruitment Report to be delivered to Manhattan.

The government asserts in its post-argument letter brief that Vitug "knowingly caused [the Recruitment Report] to be sent to the SDNY for processing and final approval by the U.S. Department of Labor (even though the mailing was reviewed first at the New Jersey Department of Labor before being sent to the U.S. Department of Labor)." However, it does not direct us to anything in the record to support the bald assertion that Vitug had knowledge that the document would be forwarded to Manhattan. The govern-

---

11. After all, it is only when an offense is continuing that venue is properly laid in " 'the whole area through which force propelled by an offender operates.' " *Candella*, 487 F.2d at 1228 (quoting *Johnson*, 323 U.S. at 275, 65 S.Ct. 249); *see also Johnson*, 323 U.S. at 275, 65 S.Ct. 249 ("By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates.").

12. The "knowingly causes to be delivered" clause was not in the original mail fraud statute, which was enacted in 1872, but was added to it during an early revision and reenactment. In *Salinger v. Loisel*, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924), the Supreme Court explained the significance of

that clause, noting that prior to its addition, "the offense was held to be complete when the letter was placed in the mail depository for transmission, and the place of the deposit was held to be the place of commission, regardless of whether or where the letter was delivered." *Id.* at 234, 44 S.Ct. 519. In amending the statute, "[e]vidently Congress intended to make the statute more effective and to that end to change it so that where the letter is delivered according to the direction, such wrongful use of the mail may be dealt with in the district of the delivery as well as in that of the deposit." *Id.* In other words, the addition of the "knowingly causes to be delivered" clause was an express attempt by Congress to expand the proper venue for mail fraud.

ment has thus failed to meet its burden of proving venue. *See Beech–Nut*, 871 F.2d at 1188. Accordingly, we conclude that venue did not properly lie in New York as to this count.

## CONCLUSION

For the reasons provided, we AFFIRM Appellant's convictions for Counts Eleven through Fourteen of the indictment, and VACATE her convictions for Counts Six through Nine, Eighteen, and Twenty–One. We REMAND for further proceedings in conformity with this opinion.